# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| RONALD BRAINER, | ) |
| | ) |
| Plaintiff, | ) |
| | ) No. 16 CV 6013 |
| v. | ) |
| | ) Magistrate Judge Mason |
| THOMAS J. DART, in his official capacity | ) |
| as Sheriff of Cook County, Illinois, et al. | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM OPINION AND ORDER

Michael T. Mason, United States Magistrate Judge:

Plaintiff Ronald Brainer brings this action pursuant to 42 U.S.C. § 1983 against Cook County Jail Officers and Counselors Regina Senese, Tariq Lucas, Hubert Thompson, Jeaneane Booker, Lester Hampton, John Mueller, and Cook County Sheriff Thomas Dart (collectively, "defendants"). Plaintiff alleges deliberate indifference to substantial risk of harm and to his medical needs in violation of his Fourteenth Amendment rights following an altercation with another inmate. Defendants have moved to dismiss the second amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons set forth below, defendants' motion to dismiss (Dkt. 40) is denied.

## I.     Background[1]

At all relevant times, Brainer was a pre-trial detainee at the Cook County Jail. On June 24, 2014, Brainer was involved in a physical altercation with another inmate

---

[1] The following facts are taken from Plaintiff's second amended complaint (Dkt. 31) and are accepted as true for purposes of the motion to dismiss. *See Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

1

named B. Schulten that was broken up by two unknown officers.[2] After that altercation, Brainer told those officers that Schulten had threatened his life and that he feared for his safety. No action was taken to re-locate Brainer or Schulten to a different housing unit.

Later that night, while Brainer was resting in his bed, inmate Schulten stabbed him in his right temple and ear. Defendant Officer Senese was on duty at the time of the attack, but did not witness the attack. Eventually, Officer Senese removed Brainer from the housing unit for questioning by defendant Officer Lucas. Defendant Officer Thompson was also made aware of the attack at this time.

Several hours after the attack, Brainer was taken to Cermak Health Services for medical treatment, at which point it was determined that he needed to be transported to Stroger Hospital. At Stroger, Brainer's wound was stitched up. Despite complaints of hearing loss, his hearing was not tested at that time. After treatment, Brainer was transported back to Cermak Health Services, placed in the same waiting room as inmate Schulten, and subjected to further threats. After being released from Cermak, Brainer was returned to the same housing unit where Schulten continued to reside.

On June 26, 2014, Brainer prepared a grievance relating to the attack and defendants' failure to protect him from harm. The grievance was received by defendant Booker, but no action was taken. On July 10, 2014, Brainer filed another grievance, complaining of continued threats and harassment by Schulten, but again no action was taken. At some point between the attack and August 9, 2014, Brainer also wrote a letter to defendant Sheriff Dart complaining about his health and safety. He received no response from Sheriff Dart. Between July 30, 2014 and August 9, 2014, Schulten was

---

[2] These unknown officers were previously named as defendants John Doe 1 and John Doe 2 in plaintiff's second amended complaint. Plaintiff has since voluntarily dismissed those unknown defendants, along with another officer, John Doe 3. (Dkt. 44.)

finally moved to a different housing unit. After the attack, Brainer also continued to complain of hearing loss and repeatedly asked to see a physician or have his hearing tested. His requests were denied.

On June 8, 2016, Brainer filed a *pro se* complaint against defendants Dart, Booker, Hampton, Hurb, Jane Does 1-5, and John Does 1-5 alleging failure to protect under 42 U.S.C. § 1983 and failure to properly address his grievances. (Dkt. 1.) The Clerk of Court quickly informed Brainer that his complaint included personal identifiers and was thus not in compliance with Federal Rule of Civil Procedure 5.2. Brainer's almost identical amended complaint (this time without personal identifiers) was received on July 11, 2016. (Dkt. 9.) Around that same time, Brainer filed a motion for attorney representation. (Dkt. 7.)

On September 8, 2016, after the initial screening required for *pro se* prisoner complaints, *see* 28 U.S.C. §1915A(a), the District Court issued an order finding that Bainer's amended complaint did not state a cause of action for failure to address his grievances. (Dkt. 10 at 3-4.) The Court did find, however, that Brainer had stated a colorable cause of action for failure to protect against defendant Dart. (*Id.* at 3.) Further, the Court noted that Brainer "arguably may be able to state a failure to protect claim against some or all of the unknown correctional officers." (*Id.*) The Court advised Brainer, however, that he could not proceed against any unknown officers until he identified them and named them in an amended complaint**.** (*Id.*) Brainer was further advised that he should attempt to identify the unknown officers as soon as possible "in light of the two-year statute of limitations and applicable tolling rules." (*Id.*) In the same

order, the District Court granted Brainer's motion for attorney representation, and appointed Joseph Korn to represent him. (*Id.* at 4.)

On November 2, 2016, attorney Korn filed a motion seeking relief from the appointment, arguing that he lacked the necessary competence to represent Brainer in this § 1983 case. (Dkt. 14.) The District Court denied that motion at a hearing on November 10, 2016, and granted Brainer until January 13, 2017 to file an amended complaint. (Dkt. 17.) Brainer's counsel also sought and was granted leave to issue subpoenas to the Cook County Sheriff's Office and Cook County Health and Hospital Systems seeking additional information about Brainer's allegations and the unknown officers. (Dkt. 23.) Subsequently, Brainer was granted two additional extensions of time to file his amended complaint. (Dkt. 27 & 30.)

Brainer eventually filed his second amended complaint (the operative pleading) on May 1, 2017 against defendants Senese, Lucas, Thompson, Booker, Hampton, Mueller, and Dart alleging the facts enumerated above.[3] (Dkt. 31.) Count I alleges deliberate indifference to a substantial risk of harm against defendants Senese, Lucas, Thompson, Booker, Hampton, and Mueller. Count III alleges deliberate indifference to a serious medical need against Senese, Lucas, Thompson, Booker, and Hampton. Counts II and IV allege *Monell* claims against Sheriff Dart based on the causes of action pled in Counts I and III, respectively.

Defendants now seek to dismiss certain claims under Rule 12(b)(6) arguing that plaintiff's claims are (1) barred by the two-year statute of limitations; (2) legally insufficient pursuant to *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996); and (3) fail to

---

[3] Again, Plaintiff also named John Does 1, 2, and 3, but those individuals have since been voluntarily dismissed. (Dkt. 44.) Previously named defendant Hurb was not re-named in plaintiff's second amended complaint.

4

properly allege a policy or practice against Sheriff Dart. Each issue is addressed in turn below.

## II. Standard on a Rule 12(b)(6) Motion to Dismiss

A motion to dismiss under Rule 12(b)(6) challenges the sufficiency of the complaint for failure to state a claim upon which relief may be granted. *Hallinan v. Fraternal Order of Police of Chicago Lodge No. 7*, 570 F.3d 811, 820 (7th Cir. 2009). While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, it must contain enough facts to state a claim for relief that is plausible on its face. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Twombly*, 550 U.S. at 570). When ruling on a 12(b)(6) motion to dismiss, the Court construes the complaint in the light most favorable to the plaintiff, accepting as true all well-pleaded facts alleged and drawing all possible inferences in the plaintiff's favor. *Tamayo v. Blagojevich*, 526 F.3d 1074, 1081 (7th Cir. 2008).

## III. Analysis

### A. Statute of Limitations

Defendants first argue that plaintiff's § 1983 claims against Senese, Lucas, Thompson, and Mueller must be dismissed as time-barred under the applicable two-year statute of limitations.[4] According to defendants, plaintiff's cause of action began to

---

[4] Defendants briefly mention the one-year statute of limitations applicable under the Tort Immunity Act, seemingly implying that it should apply to the claims here. But plaintiff's claims arise under § 1983, meaning the applicable statute of limitations is two years. *See O'Gorman v. City of Chicago*, 777 F.3d 885, 889 (7th Cir. 2015) ("The limitations period for § 1983 claims is based in state law, and the statute of

5

accrue on June 24, 2014, the date of the incident with inmate Schulten. Defendants argue that because plaintiff failed to specifically name defendants Senese, Lucas, Thompson, and Mueller until May 1, 2017, well after the two-year statute of limitations had expired, his claims against those defendants must fail. Plaintiff responds that the second amended complaint filed on May 1, 2017 relates back to the original timely complaint filed on June 8, 2016. Additionally, he argues that equitable tolling is appropriate here.

As a general matter, "the statute of limitations is an affirmative defense, and a plaintiff is not required to negate an affirmative defense in his complaint." *White v. City of Chicago*, No. 14 CV 3720, 2016 WL 4270152, at *11 (N.D. Ill. Aug. 15, 2016) (quoting *Tregenza v. Great Am. Commc'ns Co.*, 12 F.3d 717, 718 (7th Cir. 1993)). Nevertheless, "it is true that, if a plaintiff alleges facts sufficient to establish a statute of limitations defense, the district court may dismiss the complaint on that ground." *Sidney Hillman Health Ctr. of Rochester v. Abbott Labs., Inc.*, 782 F.3d 922, 928 (7th Cir. 2015) (quotations omitted). But the Seventh Circuit has cautioned against such an "irregular" approach. *Id.* (citing *Chi. Bldg. Design, P.C. v. Mongolian House, Inc.*, 770 F.3d 610, 613-14 (7th Cir. 2014)). "As long as there is a conceivable set of facts, consistent with the complaint, that would defeat a statute-of-limitations defense, questions of timeliness are left for summary judgment (or ultimately trial), at which point the district court may determine compliance with the statute of limitations based on a more complete factual record." *Sidney Hillman*, 782 F.3d at 928.

---

limitations for § 1983 actions in Illinois is two years."); *see also Jumes v. City of Chicago*, No. 94 CV 3532, 1995 WL 613137, at *3 (N.D. Ill. Oct. 17, 1995) ("The Illinois Tort Immunity Act and its one year statute of limitations does not apply to section 1983 claims.").

Here, it is undisputed that plaintiff did not specifically name Senese, Lucas, Thompson, and Mueller until the filing of his second amended complaint in May 2017, after the two year statute of limitations had expired. However, plaintiff did name several John/Jane Doe defendants in his initial pro se complaint, which was filed within the two year statute of limitations.[5] The issue then becomes whether plaintiff's second amended complaint relates back to date of his initial complaint.

Rule 15 permits an amendment to a pleading to relate back to the date of the original pleading when:

> (A) the law that provides the applicable statute of limitations allows relation back;
>
> (B) the amendment asserts a claim or defense that arose out of the conduct, transaction, or occurrence set out -- or attempted to be set out -- in the original pleading; or
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
>> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>>
>> (ii) *knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.*

Fed. R. Civ. P. 15(c)(1) (emphasis added).

Citing the "John Doe rule," defendants argue that relation back is improper under Rule 15(c)(1)(C) where, as here, plaintiff failed to identify the John Doe defendants until after the statute of limitations had run.[6] Historically, under the John Doe rule, "relation back on grounds of mistake concerning the identity of the proper party does not apply

---

[5] Specifically, plaintiff identified the John/Jane Does as individuals who were in charge of his housing unit, but explained that he needed discovery to properly identify the defendants.
[6] To be clear, defendants have not substantively argued that plaintiff's complaint was untimely because it was initially stricken by the Clerk's Officer for including personal identifiers.

where the plaintiff simply lacks knowledge of the proper defendant." *Hall v. Norfolk S. Ry. Co.*, 469 F.3d 590, 596 (7th Cir. 2006). But what defendants fail to acknowledge is that the applicability of the John Doe rule remains unsettled following the Supreme Court's ruling in *Krupski v. Costa Crociere S.p.A.*, 560 U.S. 538 (2010).[7] In *Krupski*, the Court held that "relation back under Rule 15(c)(1)(C) depends on what the party to be added knew or should have known, not on the amending party's knowledge or its timeliness in seeking to amend the pleading." *Id.* at 54. Though not a John Doe case, it has been said that *Krupski* "cut the ground out from under" the John Doe rule. *Williams v. City of Chicago*, No. 14 CV 6959, 2017 WL 1545772, at *3 (N.D. Ill. Apr. 28, 2017) (citing *White v. City of Chi.*, 2016 WL 4270152, at *16).

While some courts in this District continue to strictly apply the John Doe rule, others have shifted the inquiry as contemplated under *Krupski*. *See White*, 2016 WL 4270152, at *17 (collecting cases). This Court finds itself in the latter camp, concluding that the appropriate inquiry here is not whether plaintiff knew or should have known the identity of the proper defendants, but whether the proper defendants knew or should have known that they would have been named as defendants. *Krupski*, 560 U.S. at 548. And, like some of the other courts in that camp, the Court concludes that such an inquiry is not appropriate at the pleadings stage. *See Clair v. Cook Cty., Illinois*, No. 16 CV 1334, 2017 WL 1355879, at *4 (N.D. Ill. Apr. 13, 2017) ("Because the complaint does not speak to what the newly added defendants knew or should have known about

---

[7] Not only did defendants fail to mention the state of the law post-*Krupski* in their motion to dismiss, but they also remained silent on the issue in their reply brief even after the issue was raised by plaintiff. The Court also notes that defendants waited until their reply brief to specifically argue that relation back was improper under the first prong of 15(c)(1)(C) because defendants did not receive notice of the action. *See* Fed. R. Civ. P. 15(c)(1)(C)(i). But arguments raised for the first time in a reply brief are deemed waived. *Nelson v. LaCrosse County Dist. Attorney*, 301 F.3d 820, 836 (7th Cir. 2002).

this lawsuit, the court cannot resolve the Rule 15(c)(1)(C)(ii) issue in their favor on a motion to dismiss."); *see also Williams*, No. 2017 WL 1545772, at \*\*2-3 (N.D. Ill. Apr. 28, 2017). As such, on this record, defendants' motion to dismiss is denied on the statute of limitations issue.[8]

### B. *Babcock v. White*

Next, defendants argue that plaintiff's claims against defendants Lucas, Thompson, Booker, Hampton, Mueller, and Dart are legally insufficient pursuant to *Babcock v. White*, 102 F.3d 267 (7th Cir. 1996). Defendants do not specify which counts this argument applies to, arguing only generally that *Babcock* bars plaintiff's claims against these six defendants. However, like plaintiff, the Court concludes that this argument is targeted at Count I for deliberate indifference to substantial risk of harm, and not at Count III (deliberate indifference to serious medical need).

To state a claim for deliberate indifference to substantial risk of harm, plaintiff must show that defendants had actual knowledge of a substantial risk of harm to the plaintiff's safety, and that the defendant failed to take appropriate steps to protect the plaintiff from the specific danger. *Klebanowski v. Sheahan*, 540 F.3d 633, 639 (7th Cir. 2008). According to defendants, because plaintiff has only alleged facts indicating that these six defendants were involved *after* he was stabbed by inmate Schulten, under *Babcock v. White*, they cannot be held liable for plaintiff's subsequent fears of being attacked again. Plaintiff responds that an order dismissing his claims based on *Babcock* would be premature and otherwise improper. The Court agrees.

---

[8] Notwithstanding this finding, the Court would also agree that there may be an issue of equitable tolling here. (*See* Pl.'s Resp. at 7-9.)

9

In *Babcock v. White,* the plaintiff, an inmate at a federal prison, suffered a violent attack by members of the Mexican Mafia gang. Babcock was subsequently transferred to a different facility that was supposedly free of Mexican Mafia members. However, upon his arrival, Babcock learned that members of the gang were incarcerated at his new facility. Babcock was not attacked again, but continued to fear for his safety. He filed suit alleging the Bureau of Prisons and certain prison officials violated his Constitutional rights by failing to properly respond to his pleas for protection. Without permitting discovery, the District Court granted summary judgment in favor of defendants.

On appeal, the Seventh Circuit addressed whether an inmate who was not assaulted by, and was no longer at risk from, fellow inmates may maintain a § 1983 claim for monetary damages "based solely on prison officials' past failure to take measures to protect the prisoner from inmates known to pose a danger to the prisoner." *Babcock*, 102 F.3d at 270. The Court answered in the negative, reasoning that "[h]owever legitimate Babcock's fears may have been,…it is the reasonably preventable assault itself, rather than any fear of assault, that gives rise to a compensable claim under the Eighth Amendment." *Id.* at 272. Having alleged only "a failure to prevent exposure to risk of harm," Babcock's Eighth Amendment claims fell short.[9] *Id.*

Plaintiff's allegations here can be distinguished from those in *Babcock.* Defendants seem to disregard plaintiff's claims that he had a physical altercation with

---

[9] *Babcock* involved an inmate's claims under the Eighth Amendment. But here, Brainer was a pre-trial detainee at the time of defendants' alleged conduct. As such, his claims arise under the Fourteenth Amendment's due process clause instead of the Eighth Amendment. *Henderson v. Sheahan*, 196 F.3d 839, 844 n.2 (7th Cir. 1999). This distinction makes no practical difference for our analysis as it is well settled that an inmate's § 1983 claims under the Fourteenth Amendment are to be analyzed under the Eighth Amendment test. *Id.*

inmate Schulten earlier in the day on June 24, 2014. It was after this initial altercation that he informed certain unknown officers that he feared for his safety.[10] Specifically, plaintiff has alleged that "[t]he fact that the identity of Schulten was known to Defendants John Doe and John Doe 2, and that Schulten had threatened physical harm to Plaintiff, demonstrates that Defendants John Doe 1 and John Doe 2 and the other correctional officers knew that Plaintiff faced a substantial risk of serious injury at the hands of Schulten and possibly others." (Compl. ¶ 23.) It was later on that same day, after defendants allegedly failed to take reasonable action, that Schulten stabbed plaintiff in the head in a second altercation. It remains to be seen exactly which defendants knew of plaintiff's fears and the earlier altercation, and what steps could have been taken to protect him from the second attack, if any. As such, dismissing Count I based on *Babcock* without allowing further discovery would be improper, especially where here, unlike in *Babcock*, plaintiff has alleged he suffered actual physical harm. *See Griffin v. Spiller*, No. 03 CV 061, 2007 WL 2802607, at *5 (S.D. Ill. Sept. 24, 2007) (distinguishing a plaintiff who alleged physical harm from the plaintiff in *Babcock* who alleged only psychological harm); *see also Peate v. McCann*, 294 F.3d 879, 882 (7th Cir. 2002) (finding a triable issue of fact as to what defendant officer knew and the steps he took to prevent a second altercation between two inmates on the same day).

---

[10] Interestingly, in his initial *pro se* complaint, plaintiff also alleged that prior to June 24, 2014, he complained to prison officials "countless times" about his problems with inmate Schulten. (Dkt. 1.) These allegations were not specifically re-pled in the operative pleading, though further discovery may bring such allegations back to light.

11

At a minimum, plaintiff has stated a claim in Count I for deliberate indifference that is plausible on its face and defendants' motion to dismiss is denied on this point.[11]

### C. *Monell* Claims

Lastly, defendants argue that plaintiff has failed to plead proper *Monell* claims against Sheriff Dart. Again, in Counts II and IV, plaintiff alleges deliberate indifference to substantial risk of harm and to a serious medical need against Sheriff Dart in his official capacity.[12] As to Count II (risk of harm), plaintiff alleges that his injury was caused by, among other things, defendant Dart's widespread practices of: failing to adequately train, supervise or control officers with respect to the removal of detainees at substantial risk of a violent attack; and failing to properly staff jail dorms and housing units to prevent violent attacks from occurring. In Count IV, plaintiff alleges the widespread practices of: failing to train officers to properly assess injuries and provide access to treatment in a reasonable time frame; failing to properly review medical requests; and refusing to provide hearing devices when a detainee still has adequate hearing in the other ear. Defendants contend that these *Monell* allegations of widespread practices are conclusory, boilerplate, relate only to plaintiff's own incident and must be dismissed. Plaintiff responds that his allegations against Dart are sufficient to withstand defendants' Rule 12(b)(6) motion to dismiss. The Court agrees.

---

[11] In the same section of their motion, defendants briefly argue that defendant Mueller cannot be held liable for the allegedly improper manner in which he handled plaintiff's grievance because the District Court has already ruled that there is no right to a jail grievance system. (Dkt. 10 at 3.) Plaintiff does not dispute this point, nor does this Court. But again, at this stage, the Court will not dismiss claims against Mueller raised in Count I. Following additional discovery, plaintiff is advised to consider whether voluntarily dismissing Mueller is appropriate.

[12] Though there seemed to be some initial confusion as to whether Dart was also sued in an individual capacity, plaintiff has conceded that his claims against Dart are in his official capacity only. (Resp. at 15.) As such, plaintiff's claims are actually against the Cook County Sheriff's Office. *See Walker v. Sheahan*, 526 F.3d 973, 977 (7th Cir. 2008) ("Actions against individual defendants in their official capacities are treated as suits brought against the government entity itself.").

To state a valid *Monell* claim, plaintiff must plead factual content that would allow the Court to plausibly infer that: (1) he suffered the deprivation of a constitutional right; and (2) an official custom or policy caused that deprivation. *Monell v. Dep't of Social Services*, 436 U.S. 658, 694-95 (1978). With respect to the second element, a plaintiff must plead that the constitutional violation was caused by: (1) an express municipal policy; (2) a widespread, though unwritten, custom or practice; or (3) a decision by a municipal agent with final policymaking authority. *Milestone v. City of Monroe, Wis.*, 665 F.3d 774, 780 (7th Cir. 2011).

Here, plaintiff has sufficiently pled both elements of his *Monell* claims. As discussed previously, he has stated a claim for Fourteenth Amendment violations for deliberate indifference to a substantial risk of harm. And defendants have not otherwise substantively attacked the sufficiency of Count III for deliberate indifference to his medical needs on the day of the attack and thereafter. He has also laid out the specific practices that he claims resulted in his injuries, going beyond just boilerplate language.

Defendants are correct that, as of yet, plaintiff has only included allegations related to his own incident. But the Seventh Circuit recently cautioned that courts may not apply a "heightened pleading standard" to *Monell* claims. *White v. City of Chicago*, 829 F.3d 837, 844 (7th Cir. 2016), cert. denied, 137 S. Ct. 526 (2016) (quoting *Leatherman v. Tarrant County Narcotics Intelligence and Coordination Unit*, 507 U.S. 163, 164 (1993)). Rather, Federal Rule of Civil Procedure 8(a)(2) requires that a complaint include only a "short and plain statement of the claim showing that the pleader is entitled to relief." In *White*, the court found that a plaintiff alleging a *Monell* claim based on his own experiences satisfied the requirements of Rule 8. *White*, 829

F.3d at 844 (noting that plaintiff "was not required to identify every other *or even one other individual* who had been arrested pursuant to a warrant obtained through the complained-of process.") (emphasis added).

Post-*White* courts analyzing *Monell* claims have "scotched motions to dismiss" premised on arguments that the complaint does not contain allegations beyond those relating to the plaintiff. *Stokes v. Ewing*, 16 C 10621, 2017 WL 2224882, at *4 (N.D. Ill. May 22, 2017) (plaintiff's allegations that he was falsely arrested pursuant to a "custom, practice, and policy" that "promoted illegal arrests of innocent individuals" sufficient to survive a motion to dismiss under *White*); *see also Zinn v. Village of Sauk Village*, 16 CV 3542, 2017 WL 783001, at *7 (N.D. Ill. Mar. 1, 2017) (holding that plaintiffs sufficiently pled a *Monell* claim under *White* where plaintiffs alleged that they suffered a constitutional deprivation "pursuant to [defendant village's] widespread practice of illegally and unconstitutionally seizing private property" and charging monetary fees for its return); *Williams v. City of Chicago*, No. 16 CV 8271, 2017 WL 3169065, at *8-9 (N.D. Ill. July 26, 2017) ("Under the binding precedent set by *White*, 829 F.3d at 844, Plaintiff's allegations of a pattern or practice of ignoring complaints of discrimination are enough to survive a motion to dismiss."). Defendants' motion to dismiss on this point can be similarly "scotched." This is not to say that plaintiff will prevail on the merits, only that plaintiff's *Monell* claims are sufficient to survive defendants' motion to dismiss.

IV.     **Conclusion**

For the foregoing reasons, defendants' motion to dismiss is denied. It is so ordered.

14

*Michael T. Mason* (signature)
**Michael T. Mason**
**United States Magistrate Judge**

**Dated: March 28, 2018**